UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELL BROWN,<br><br>            Plaintiff,<br><br>        v.<br><br>C/O R. HARRIS, et al.,<br><br>            Defendants. | Case No.: 1:12-cv-01472-BAM (PC)<br><br>ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 91 ,93) |

## I.     Introduction

Plaintiff Cornell Brown is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.   Plaintiff is proceeding against Defendants Correctional Officer (C/O) R.  Harris and C/O  C. Nelson, employees of the California Department of Corrections and Rehabilitation (CDCR) at CCI Tehachapi, where the events at issue occurred.  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1]   Plaintiff alleges in his complaint that Defendant Harris subjected him to excessive force on April 12, 2012, and Defendant Nelson failed to protect Plaintiff from the use of force, in violation of the Eighth Amendment.

This action proceeds on the original complaint filed September 10, 2012.  On November 19, 2015, Defendants filed a motion for summary judgment that is before the Court. (ECF No. 91.)   The

---

[1] Plaintiff filed a consent to proceed before a magistrate judge on September 19, 2012.  (ECF No. 5.)   Defendants filed a consent to proceed before a magistrate judge on September 10, 2015. (ECF No. 83.)

motion is filed on behalf of Defendant Nelson on Plaintiff's claim of failure to protect in violation of the Eighth Amendment. Plaintiff filed an opposition that is styled as a cross-motion for summary judgment on December 9, 2015. (ECF No. 92.)[2] Defendants filed opposition to Plaintiff's motion on December 16, 2015. (ECF No. 94.) The motion is deemed submitted. Local Rule 230(l).

Defendant Nelson argues that although Plaintiff denies his version of events, he has not raised any triable issue of fact, and as a result summary judgment should be granted in his favor. As explained below, the Court finds that Defendant Nelson has come forward with evidence that establishes a lack of existence of a triable issue of fact as to whether Defendant Nelson failed to protect Plaintiff in violation of the Eighth Amendment. Plaintiff has not come forward with evidence to the contrary. Defendants' motion for summary judgment should therefore be granted.

## II. Motion For Summary Judgment

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.

---

[2] Plaintiff did not file a separate opposition to Defendants' motion for summary judgment. On page 3 of his motion, Plaintiff indicates that "Plaintiff obligations for opposing this motion are met by filing this motion for summary judgment in this matter." The Court therefore considers Plaintiff's motion as an opposition to Defendants' motion for summary judgment.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

In arriving at its conclusion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B.  Undisputed and Disputed Material Facts[3]

Defendants support their motion with Plaintiff's complaint, the declaration of Defendant Nelson, Plaintiff's deposition, and the declaration of counsel authenticating documents from Plaintiff's central file.[4] At the time of the events at issue, Defendants Harris and Nelson were assigned to Facility A, Housing Unit 4 (FA-HU4) at CCI, where Plaintiff was housed. (ECF No. 1 at 7.) FA-HU4 is a Security Housing Unit (SHU). Inmates who live in the SHU are classified as level-four maximum custody inmates, which is the highest level of security in the California prison system. (Nelson Decl. ¶ 2.)

Defendant Harris was assigned to work in FA-HU4 as a search and escort officer. (Hood Decl., Ex. B at 0001 (Rules Violation Report (RVR) issued to Plaintiff for resisting a peace officer on April 12, 2012.) Defendant Nelson was assigned to work in FA-HU4 as a control booth officer. (Nelson Decl. ¶ 1.) The control booth officer is not permitted to leave the control booth during their shift, at

---

[3] In his opposition, Plaintiff includes a section titled as "Disputed – statement of facts." (ECF No. 93 at 2:14.) Plaintiff does not set forth a separate statement of undisputed facts as required by Local Rule 160(b), but argues that Defendants' motion should be denied. Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[4] Plaintiff's September 10, 2012, complaint is signed under the penalty of perjury, and will therefore be considered as a declaration in support of opposition to the motion for summary judgment.

any time, for any reason, without notification and approval from their supervisor and proper relief staff taking their place. (Nelson Decl. ¶ 3.) Defendant Nelson's primary function as the control booth officer is to act as a safeguard against attacks on inmates and staff. (Nelson Decl. ¶ 4.)

The control booth is elevated above the housing unit, where C/O Nelson is able to view all three sections of the unit (left, center, and right) in their entirety. C/O Nelson is required to maintain visual surveillance of all activities occurring in all three sections of the housing unit. (Nelson Decl. ¶ 5.) C/O Nelson controls all inmate movement within the housing unit, as well as the movement of all inmates and staff entering and exiting the housing unit. When an inmate needs to leave his cell, floor staff directs C/O Nelson to open and close specific doors. (Nelson Decl. ¶ 6.)

C/O Nelson is required to provide armed coverage for all inmate escorts, meaning that he must either wear or hold a Mini 14 rifle at all times during inmate movement, including, but not limited to, when staff are on the floor providing showers or supplies, cell feeding, assisting medical personnel, or providing yard access. (Nelson Decl. ¶ 7.) If an emergency situation arises that endangers the safety of either an inmate or a staff member, C/O Nelson is required to respond by activating the housing unit's alarm, which emits a loud sound and flashing light facility-wide. Activating the alarm is the most effective and fastest way to summon nearby staff to assist with an emergency situation. (Nelson Decl. ¶ 8.) If something goes wrong and staff are unable to gain control of the emergency situation, because he is not able to leave the control booth, C/O Nelson's only other options would be to fire either a 40 millimeter launcher or a Mini 14 rifle to quell the situation. (Nelson Decl. ¶ 8.) Activating the alarm is the most effective and fastest way to summon emergency staff response to any situation, be it an inmate attacking another inmate or staff, an inmate resisting an escort, and even, as Plaintiff has alleged in this case, a staff member using force on an inmate that C/O Nelson viewed as excessive. (Nelson Decl. ¶ 9.)

On April 12, 2012, at approximately 7:32 a.m., Defendant C/O Harris went to Plaintiff's cell to escort him to the B-Section shower. (Hood Decl., Ex. B at 0001 (RVR issued to Plaintiff for resisting a peace officer on April 12, 2012); Pl.'s Dep. at 44:8.) That morning, C/O Nelson was providing armed coverage for shower escorts in FA-HU4. (Nelson Decl. ¶ 10; Pl.'s Dep. at 45:3-9.) As far as C/O Nelson knew, C/O Harris went to Plaintiff's cell so that he could escort Plaintiff to the shower.

(Nelson Decl. ¶ 10.)  From the control booth, C/O Nelson opened the door to Plaintiff's cell so that C/O Harris could escort him to the shower. (Nelson Decl. ¶ 10.)   For safety and security reasons, an inmate is required to face forward at all times during an escort, and he is not permitted to stop walking unless instructed by the escorting officer. (Nelson Decl ¶ 10.)  C/O Nelson observed C/O Harris escorting Plaintiff with his hands holding Plaintiff's arm and his extendable baton drawn, as is required during an inmate escort.  (Nelson Decl. ¶ 10.)

During the escort, Plaintiff suddenly stopped walking, attempted to break free from C/O Harris's grasp, and tried to turn towards C/O Harris.  (Nelson Decl. ¶ 10.)  Because of all the ambient noise that is typical in the housing unit, Officer Nelson was unable to hear what, if anything, C/O Harris said to Plaintiff.  (Nelson Decl. ¶ 10.)   Based on C/O Nelson's observation, Plaintiff's behavior posed an immediate threat to C/O Harris's safety.  (Nelson Decl. ¶ 10.)  C/O Harris physically forced Plaintiff to the ground, but Plaintiff kept attempting to get up off the ground, so C/O Harris used his baton to strike Plaintiff twice on his right calf  (Nelson Decl. ¶ 11; Hood Decl., Ex. B at 0001 (RVR issued to Plaintiff for resisting a peace officer on April 12, 2012; Ex. C at 0001-0002) (Crime/Incident Report.)  Even after C/O Harris struck Plaintiff with his baton, Plaintiff continued to struggle and attempt to get up off the ground, so C/O Harris deployed his pepper spray towards Plaintiff's face.  Only then did Plaintiff stop struggling.   (Nelson Decl. ¶ 12. Hood Decl.; Ex. B at 0001 (RVR issued to Plaintiff for resisting a peace officer on April 12, 2012; Ex. C at 0001-0002) (Crime/Incident Report).

Plaintiff does not know how long the alleged assault lasted because he was "in a daze' and he "wasn't keeping track of time."  (Pl.'s Dep. at 53:19-21, 54:1-3.)  According to C/O Nelson, the entire incident happened in a matter of seconds, and C/O Nelson activated his alarm almost immediately.  (Nelson Decl. ¶ 11.)  Multiple staff members  responded to the alarm within 5-30 seconds, depending on where they were located in the housing unit at the time C/O Nelson activated the alarm.  (Nelson Decl. ¶ 13; Hood Decl., Ex. C at 0007-0014 (Crime/Incident Report)).   Plaintiff believes that approximately 10-15 members responded to the alarm. (Pl.'s Dep. 61:8-9.)   During the incident, Plaintiff claims he tried to look up at the control booth, but he was unable to do so because C/O Harris was punching him in the face and then striking him with his baton. (Pl.'s Dep. at 51:12-24.)

At approximately 7:32 a.m., medical staff was notified that Plaintiff needed to be evaluated, Plaintiff was medically examined at approximately 7:38 a.m., and a Medical Report of Injury or Unusual Occurrence (CDCR 7219) was completed, documenting his injuries. (Hood Decl., Ex. D (CDCR 7219 dated April 12, 2012); Pl.'s Dep. at 65:14-15.)  After the medical examination, Plaintiff was taken outside, where he was decontaminated from the pepper spray with running water from a hose.  (Pl.'s Dep. at 65:12-18.)

C/O Nelson did not observe C/O Harris "brutally assault" Plaintiff during this incident, but even if he had, the only assistance C/O Nelson could have provided was activating the alarm quickly, which he did.  (Nelson Decl. ¶ 16.)  C/O Nelson was not permitted to leave the control booth, and the only other two options available to him – firing either a 40 millimeter launcher or a Mini 14 rifle – would have been highly unreasonable, and even excessive and dangerous under the circumstances.  (Nelson Decl. ¶ 16.)  C/O Nelson reasonably believed that activating the alarm would summon the emergency assistance necessary to gain control of the situation between C/O Harris and Plaintiff, and it did.  (Nelson Decl. ¶ 16.)

### C. Analysis

Plaintiff's claim is that Defendant Nelson failed to protect him in violation of the Eighth Amendment.  The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006.)   Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted).  Prison officials have a duty under the Eighth Amendment to protect prisoners from violence because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 511 U.S. at 833-34 (quotation marks omitted). Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs

when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

The Court finds that Defendant Nelson has met his burden on summary judgment. Defendant Nelson has submitted evidence that establishes that on the date of the incident at issue, he was simply performing his duties as a control booth officer when he opened Plaintiff's cell door and provided armed coverage while C/O Harris escorted Plaintiff to the shower. There are no objective facts from which C/O Nelson could have drawn an inference that Plaintiff faced a substantial risk of serious harm. As far as C/O Nelson knew, C/O Harris went to Plaintiff's cell solely to escort him to the shower, and not for any improper purpose. Defendant Nelson's evidence establishes, without dispute, that he was not aware of an objectively serious risk to Plaintiff's safety when he opened the cell door.

The evidence establishes that, once Defendant Nelson became aware of the risk to Plaintiff's safety when C/O Harris allegedly took Plaintiff to the ground, Defendant Nelson, in accordance with his training, sounded the alarm almost immediately. The evidence establishes that multiple staff members responded to the alarm in a minute or less, and that Plaintiff was medically examined and then decontaminated from the pepper spray. The burden therefore shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact as to whether Defendant Nelson was deliberately indifferent to a serious risk to Plaintiff's safety.

Plaintiff's motion and opposition (ECF No. 93 ) consists of his declaration, and a five page memorandum of points and authorities. Plaintiff submits as exhibits to his opposition a copy of the complaint on which this action proceeds, and portions of his deposition transcript. Plaintiff also submits a copy of the CDCR Form 7219, Medical Report of Injury or Unusual Occurrence dated April 12, 2012.

In his declaration, Plaintiff appears to argue that Defendant Nelson violated policy because he opened the cell door when only one officer, not two, were there to escort him to the shower. Specifically, Plaintiff declares that "C/O Nelson had full control of all cell and section doors, and knew that opening Plaintiff's cell door with only C/O Harris was a clear violation of CDCR policy, and there was a grave risk of harm or danger to Plaintiff if Plaintiff's cell door was open with only one officer, do [sic] to reprisal and Plaintiff's past run in's with staff, in past, 2002." (ECF No. 93 at 2:17-

7

26.) "Declarations must be made with personal knowledge; declarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1088, 1091 (9th Cir. 2012) (citing Skillsky v. Lucky Store, Inc., 893 F.2d 1011, 1091 (9th Cir. 1990) and Fed. R. Civ. P. 56(c)(4). Plaintiff's declaration establishes that Defendant Nelson opened the door despite the fact that only one escorting officer was present. That only one officer escorted Plaintiff may have violated policy or procedure, but does not raise disputed that Defendant Nelson on notice that Plaintiff faced a particular risk of harm. Defendant Nelson must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must draw the inference." Farmer, 511 U.S. at 835.

Plaintiff's declaration that he had past "run ins" with staff going back to 2002, does not establish evidence that Defendant Nelson knew that Plaintiff faced a particular risk of harm. Plaintiff's conclusion that Defendant Nelson was aware of a particular danger is unsupported by evidence. The Court may disregard Plaintiff's self-serving declaration in opposition to summary judgment if it states conclusions rather than admissible evidence. Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497-98 (9th Cir. 2015.)

Plaintiff makes the unsubstantiated argument that his declaration portrays a "completely needless use of force against a inmate who was cuffed behind his back in a attempt to cooperate with orders to giving by correctional officer Harris so he could be showered [sic]." (ECF No. 93 at 6:7-8.) Plaintiff does not however, come forward with any evidence that Defendant Nelson was aware of a specific risk of harm faced by Plaintiff when Nelson opened the cell door. The undisputed evidence establishes that Defendant Nelson's job was to open the cell door and that he acted almost immediately when he became aware of a risk to harm to Plaintiff by sounding the alarm when Plaintiff was taken to the ground by C/O Harris. The undisputed evidence establishes that Plaintiff was medically evaluated and decontaminated. That Plaintiff may believe that Defendant Nelson somehow delayed a response is not supported by any evidence. Plaintiff admits that he had no concept of the time during the incident. (Pl.'s Dep. at 53:19-21, 54:1-3.)

In his verified complaint, Plaintiff declared that while Plaintiff was being subjected to excessive force, Defendant Nelson "watched the plaintiff being pepper sprayed in the mouth, beaten in

the face by fists, beaten in the back and legs with a baton, and not allowing the plaintiff to be decontaminated." (ECF No. 1 at 13:8-9.) Regarding what he knew about the timing of Defendant Nelson's response, in his deposition, Plaintiff testified that "I don't know how long it took because I was -- I was in a daze." (Pl.'s Dep. 53:21.)  This evidence does not rebut Defendant Nelson's specific recollection that he activated the alarm immediately, and that the entire incident was over and multiple staff members responded to the alarm in under a minute.  Plaintiff concedes that Defendant Nelson activated the alarm, and that approximately 10-15 staff members responded.

Plaintiff styles his opposition as his own motion for summary judgment.  On Plaintiff's motion for summary judgment, Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex, 477 U.S. at 323.  "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact, 99 F.R.D. 465, 487 (1984)).  Thus, as to Plaintiff's motion for summary judgment, Plaintiff must demonstrate there is no triable issue as to the cognizable matters alleged in his complaint. Id.  Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The Court finds that, as Plaintiff has not come forward with any evidence that establishes a triable issue of fact as to whether Defendant Nelson was deliberately indifferent to his safety in violation of the Eighth Amendment in his opposition to Defendants' motion for summary judgment, and he does not meet his burden of coming forward with evidence that no reasonable trier of fact could find for other than Plaintiff.  Plaintiff's motion for summary judgment should therefore be denied.

Plaintiff also names Defendants Harris and Nelson in both their individual and official capacities, and is seeking monetary damages.  The Eleventh Amendment bars suits for damages in federal court against state officials acting in their official capacities.  Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  Under the doctrine of sovereign immunity, "a suit

against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). "State officials" include prison employees. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Because the Eleventh Amendment bars suits against Defendants Harris and Nelson in their official capacities, judgment should be entered for them in their official capacities.

### III. Conclusion and Order

Defendants have come forward with evidence establishing, without dispute, that Defendant Nelson was not deliberately indifferent to a serious risk of harm to Plaintiff's safety in violation of the Eighth Amendment. Plaintiff has not come forward with evidence that creates a triable issue of fact as to whether Defendant Nelson was aware of a specific risk of harm to Plaintiff, and acted with deliberate indifference to that risk. Plaintiff therefore fails to meet his burden on his own motion for summary judgment. Plaintiff also fails to come forward with evidence that no reasonable trier of fact could find for other than Plaintiff. Plaintiff's motion for summary judgment should therefore be denied.

Accordingly, IT IS HEREBY ORDERED that

1. Plaintiff's motion for summary judgment is denied.
2. Defendants' motion for summary judgment is granted in favor of Defendant Nelson and against Plaintiff.
3. Defendants' motion for summary judgment is granted in favor of Defendants Harris and Nelson in their official capacities.
4. This action proceeds against Defendant C/O Harris on Plaintiff's claim of excessive force on April 12, 2012. An order setting a trial date and a schedule for pretrial litigation will issue.

IT IS SO ORDERED.

Dated:   **May 13, 2016**          /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE